J-A02041-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
  :   PENNSYLVANIA
  :
v.   :
  :
  :
  :
FRANCES CORBETT   :
  :
Appellant   :   No. 263 WDA 2020

Appeal from the Judgment of Sentence Entered January 23, 2020
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-CR-0008833-2019

BEFORE:  BOWES, J., NICHOLS, J., and McLAUGHLIN, J.

MEMORANDUM BY McLAUGHLIN, J.:       **FILED:  April 22, 2021**

Frances Corbett appeals from the judgment of sentence imposed following her convictions for two counts of driving under the influence of a controlled substance ("DUI"). **See** 75 Pa.C.S.A. §§ 3802(d)(1), 3802(d)(2). Corbett argues the evidence was insufficient to prove she had driven a vehicle while she was intoxicated. We affirm.

At Corbett's non-jury trial, the Commonwealth put into evidence[1] the testimony of Officer Nicklas Hawk of the Blawnox Police Department. Officer Hawk testified that on June 2, 2019, he responded to a 911 call for a suspected overdose. **See** Trial Court Opinion, filed May 12, 2020, at 3 (footnotes omitted). The caller stated that there was a woman sitting in the driver's seat

---

[1] By agreement of the parties, Officer Hawk's testimony from both the preliminary hearing and a pre-trial hearing on Corbett's *habeas corpus* petition were incorporated into the trial evidence. **See** N.T., 1/23/20 (Habeas Corpus/Non-Jury Trial), at 24.

of a car, slumped out of the window. N.T. at 50-51. Officer Hawk "arrived within thirty (30) to forty-five (45) seconds and observed [Corbett] fully outside the vehicle but leaning against it with the car keys in her right hand." Trial Court Op. at 3 (footnotes omitted). The car was registered to Corbett's boyfriend. *Id.* The engine was off, and the car was legally parked alongside a public road. N.T. at 10-11, 19.

Officer Hawk testified that Corbett told him "that she had come from Walmart and Giant Eagle and had just dropped off a friend at a housing complex." Trial Court Op. at 3 (footnotes omitted). Officer Hawk later confirmed that the friend to whom Corbett referred, Heather Burke, lived in an apartment complex located one block away from where the car was parked. N.T. at 46. When defense counsel asked Officer Hawk on cross examination whether Corbett actually admitted that she had been driving, Officer Hawk responded, "Yeah, she stated that she had just dropped her friend Heather off," but clarified that Corbett "did not come out and say, 'Hey, I was driving.'" *Id.* at 9, 44.

When asked whether Officer Hawk could determine what time the vehicle had been parked, Officer Hawk responded, "Actually, she told me that she had just gotten there. She had just dropped her friend Heather off because she was at Walmart and Giant Eagle." *Id.* at 12.[2] "Officer Hawk testified that

_____

[2] *See also id.* at 13 (Officer Hawk testifying, "Ms. Corbett told me that she had just gotten back – she had just drove and she had just gotten back from

the hood of the vehicle was warm to the touch, and that after receiving consent to search the vehicle, [he] located a plastic grocery bag with an item that was still cold to the touch." Trial Court Op. at 3 (footnotes omitted). Specifically, Officer Hawk testified that when he searched the car, "there was cottage cheese up in the front seat. It was in a Giant Eagle bag that was still cold[.]" N.T. at 17; **see also id.** at 12, 36-37.

Officer Hawk's testimony also established Corbett's level of intoxication, which Corbett did not contest:

> [Corbett] had difficulty maintaining balance, appeared confused, and exhibited slurred speech. These behaviors were to the degree that the officer chose not to conduct field sobriety tests out of concern for [Corbett's] physical safety. Officer Hawk, a five (5) year veteran with the police department with experience from DUI training and nearly 200 [DUI] stops, asked [Corbett] if she had taken anything, to which she responded that she uses methadone in the mornings.
>
> . . .
>
> Medics arrived and transported [Corbett] to the hospital where a blood draw was conducted with results showing she was positive for Methadone, Fentanyl, Clonazepam, and 7-aminoclonazepam. While at the hospital[, Corbett] offered that she is a recovering heroin addict, reiterating that she takes methadone, and also admitted to consuming two (2) to three (3) alcoholic beverages. Based on his training, experience, and observations, Officer Hawk testified that he believed [Corbett] was under the influence of a substance and was incapable of safely operating a vehicle.

---

the store"), 36 (Officer Hawk testifying, "[S]he had made a statement to me that she had just come from the grocery store. She came from Walmart and Giant Eagle, and she had just dropped her friend Heather off").

Trial Court Op. at 3-4 (footnotes omitted). The police did not locate any evidence of intoxicating substances or drug paraphernalia when searching the vehicle. *Id.* at 3.

The court found Corbett guilty of two counts of DUI. It sentenced her to four days in Allegheny County's DUI Alternative to Jail Program, and six months' concurrent probation.

Corbett presents a single issue on direct appeal: "Whether the evidence was sufficient to support Ms. Corbett's DUI convictions where the Commonwealth failed to prove, beyond a reasonable doubt, that she was driving, operating, or in actual physical control of the vehicle while under the influence of a controlled substance[.]" Corbett's Br. at 5.

On appellate review of a sufficiency challenge, "we 'must determine whether the evidence admitted at trial, and all reasonable inferences drawn therefrom, when viewed in a light most favorable to the Commonwealth as verdict winner, support the conviction beyond a reasonable doubt.'" ***Commonwealth v. Clemens***, 242 A.3d 659, 664 (Pa.Super. 2020) (quoting ***Commonwealth v. Feliciano***, 67 A.3d 19, 23 (Pa.Super. 2013) (*en banc*)). "[T]he Commonwealth's evidence need not preclude every possibility of innocence in order to prove guilt beyond a reasonable doubt," and the Commonwealth may prove each element of the crime through circumstantial evidence. *Id.* at 665. It is within the purview of the fact-finder to determine which portion of the evidence to believe—all, part, or none—and we do not re-weigh the evidence on sufficiency review. *Id.*

Corbett was convicted of two counts of DUI under Section 3802(d), which states "[a]n individual may not drive, operate or be in physical control of the movement of a vehicle" while she has controlled substances in her blood or while under the influence of a drug which impairs her ability to drive safely. 75 Pa.C.S.A. § 3802(d)(1), (d)(2). Actual physical control "is determined based on the totality of the circumstances, including the location of the vehicle, whether the engine was running and whether there was other evidence indicating that the defendant had driven the vehicle at some point prior to the arrival of police on the scene." ***Commonwealth v. Wolen***, 685 A.2d 1384, 1385 (Pa. 1996); ***see also Commonwealth v. Williams***, 941 A.2d 14, 27 (Pa.Super. 2008).

Corbett argues the evidence was insufficient to prove that she had driven, operated, or otherwise been in actual physical control of the car while she was intoxicated. Corbett asserts no witnesses saw her driving the car, she was not sitting in the drivers' seat when Officer Hawk arrived, and the car was turned off and legally parked. She argues that there was no evidence to prove that Heather Burke, who was with her at the store and whose home was within walking distance, had not driven the car there, or that Corbett had not become intoxicated after she parked the car. Corbett emphasizes that she never explicitly admitted to driving the vehicle when speaking with Officer Hawk, and never told him exactly when she had arrived. Corbett argues Officer Hawk's testimony that the engine was warm does not establish that the car

had recently been driven, because the incident occurred on an afternoon in June.

Corbett relies on **Commonwealth v. Price**, 610 A.2d 488 (Pa.Super. 1992), for support. She argues that in that case, we found the evidence was insufficient to prove the defendant had operated a motor vehicle, even though the police had found him sitting in the driver's seat and holding the keys to the trunk in his hand. Corbett's Br. at 17-18 (citing **Price**, 610 A.2d at 488-89). We held that "[t]here must be some indicia that the intoxicated person, who was seated in the car, had actual physical control of the vehicle," and that "*at a very minimum*, a parked car should be started and running before a finding of actual physical control can be made." **Id.** at 19 (quoting **Price**, 610 A.2d at 490) (emphasis in **Price**).

Further, Corbett distinguishes her case from **Commonwealth v. Trial**, 652 A.2d 338 (Pa.Super. 1994), in which we held **Price** applied only to parked cars. **Id.** at 19-21 (citing **Trial**, 652 A.2d at 340). We concluded the evidence in **Trial** was sufficient to prove actual physical control where the police found the defendant slumped over the steering wheel of the car, which had been stopped in the middle of traffic, with his seatbelt fastened, the keys in the ignition, and the parking lights on. **Id.** (citing **Trial**, 652 A.2d at 339-40). Corbett argues the facts of her case more closely align with **Price** than those of **Trial**, as Corbett was simply standing outside of a legally parked car when the police arrived.

Corbett also distinguishes her case from **Commonwealth v. Johnson**, 833 A.2d 260 (Pa.Super. 2003), in which she asserts we held that the idea that an unknown person might have been driving the defendant's car and fled the scene of an accident was an "implausible and unconvincing" speculation. **Id.** at 21-22 (quoting **Johnson**, 833 A.2d at 264). She argues that in **Johnson**, the defendant had been in a two-vehicle crash, with no evidence to support the existence of another driver, whereas here, Corbett told Officer Hawk that Heather Burke had been shopping with her, and the vehicle was parked only one block from Burke's home, indicating that Burke might have driven the vehicle. **Id.** at 22 (citing **Johnson**, 833 A.2d at 261, 264).

The circumstantial evidence, viewed in the light most favorable to the Commonwealth, as verdict-winner, supports a finding that Corbett drove the car while intoxicated. The car was registered to her boyfriend, and Corbett told Officer Hawk that she had just "dropped off" Burke. The commonsense interpretation of this statement is that Corbett had driven them both to Burke's home, Burke had gotten out, and Corbett had continued driving. The evidence was also sufficient to dispel any notion that Corbett became intoxicated only after parking the vehicle. Not only was the hood of the car still warm, but there was cold cottage cheese in the car, and no alcohol, drugs, or drug paraphernalia to be found. This evidence was sufficient to prove beyond a reasonable doubt that Corbett had driven the car while intoxicated.

The holding of **Price** does not compel a different result. In **Price**, as in the case before us, the police found the intoxicated defendant with a parked

vehicle, and the defendant admitted on the scene to having driven the vehicle. 610 A.2d at 488-89. However, in *Price*, the car was inoperable when the police arrived, and at trial, the defendant introduced evidence proving that his girlfriend had driven the car and had left to seek help – evidence that the jury believed, as reflected by a special interrogatory on the verdict slip. *Id.* at 490. Here, Corbett did not introduce any evidence at trial that so contradicted her on-the-scene admissions to Officer Hawk as to invalidate those statements. Nor was her car inoperable when the police arrived.

In contrast, in *Johnson*, a police officer responded to the scene of a two-car accident, where she found the defendant leaning on the outside of his car, women and children seated in the second car, and no other cars or persons in a three-block radius. 833 A.2d at 261. We concluded the defendant's bald argument that an unnamed party may have driven his vehicle and fled the scene of the accident to be entirely speculative. *Id.* at 263-64. Similarly, Corbett's argument that Burke could have driven the vehicle is without basis in evidence, making Corbett's case more akin to *Johnson* than *Price*.[3]

Judgment of sentence affirmed.

---

[3] We agree with Corbett that her case is readily distinguishable from *Trial*, where the police found the defendant passed out in a stalled car, with his keys in the ignition and his seatbelt on, in the middle of traffic. 652 A.2d at 212-13. There was no contest in this case that Corbett's car was parked.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary


Date:  4/22/2021